UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RHONDA FAULKNER,

                                      Plaintiff,

        v.                                                   1:05-cv-0974

NIAGARA MOHAWK POWER CORPORATION,

                                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

       Plaintiff Rhonda Faulkner commenced the instant action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. §§ 1981-1983; and the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq., claiming that she was subjected to a hostile work environment on account of her race and that she was retaliated against for engaging in protected activity.  Presently before the Court is Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.  Plaintiff has not opposed the motion.

**I.    FACTS**

       The following facts are taken from Defendant's Statement of Material Facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3).  Because Plaintiff failed to oppose Defendant's submission, those facts that are supported by citations to the record are deemed admitted by Plaintiff.  N.D.N.Y.L.R. 7.1(a)(3); See Michalski v. Home Depot, Inc., 225 F.3d 113, 115 (2d Cir. 2000).

Plaintiff commenced her employment with Defendant on April 12, 2001. Her position was that of Meter Reader A position in the Capital Region office. The terms and conditions of Plaintiff's employment was governed by a collective bargaining agreement ("CBA"). On April 7, 2002, Plaintiff progressed to the position of Meter Reader B. While employed as a Meter Reader B, Plaintiff bid on a temporary/durational position as a Janitor A in the Facilities Department at Defendant's North Albany location. Plaintiff was awarded the Janitor A position and began working as such on December 8, 2002. In her janitorial position, Plaintiff was generally responsible for the "outside run of Niagara Mohawk." Pl. Dep. at 39.

On June 10, 2003, the janitor responsible for maintenance in the main building did not report to work. Accordingly, Plaintiff was assigned to work in the main building. This was not Plaintiff's typical assignment. While Plaintiff was on break, she went into the "bum's room" in the Albany Service Center to make a personal telephone call. While in the "bum's room", Plaintiff observed a noose hanging in the room. Plaintiff called her Union Steward, Carl DiVeglia. DiVeglia went to the Bum's room and removed the noose.

The next day, June 11, 2003, Plaintiff reported to her supervisor, Sharon Prefore, that she had seen the noose and believed it to be a sign of racial intimidation. Prefore contacted James Rogers, the Superintendent of Power Delivery in North Albany who was responsible for the personnel who used the "bum's room". Rogers investigated the matter and, although he was unable to determine who hung the noose, concluded that the noose had been hung as a joke directed at a particular white, male employee regarded as obnoxious by the other workers.

On June 17, 2003, head janitor, Velton Cade, told Plaintiff that he had seen two dead animals that appeared to be a rat and a pigeon in a plastic bag near a trash can at a garage in the work area. Plaintiff never observed the dead animals, but believed them to be in retaliation for having complained about the noose.

On June 20, 2003, Plaintiff called Defendant's Human Resources Department to complain about the alleged harassment and retaliation. Defendant's Human Resources representatives immediately scheduled a meeting with Plaintiff. During the meeting, Defendant explained to Plaintiff that it would take the matter seriously and send an investigation team to further investigate the matter.

On June 25, 2003, two of Defendant's representatives traveled to Albany to investigate Plaintiff's allegations. The investigation included interviewing nine employees. The investigators concluded that the noose was a joke directed at the white, male employee who was perceived by others to be a "loud mouth". The noose was been placed near that employee's locker and over a chair often used by that employee when he was in the "bum's room". The investigators further concluded that the dead "rat" was, in fact, a squirrel that had been electrocuted at the Rotterdam Substation on June 16, 2003. This conclusion was based on the interview of Brian Jordan who stated that he found the squirrel on his truck[1] and brought the squirrel back to the garage for disposal. Jordan further stated that, as he was disposing of the squirrel, he saw a dead pigeon in the vicinity. Jordan placed both dead animals in plastic bags and placed them near the trash can. The investigation revealed that it was not unusual for employees to bring animals that had been electrocuted back to the

---

[1] It appears that a crew may have placed the squirrel on the truck after having found it electrocuted at a sub-station.

garage for disposal. It was further found that the garage had a problem with pigeons and, therefore, finding a dead pigeon was not uncommon. The investigators, therefore, concluded that the noose was not directed at Plaintiff and was not racially motivated. The investigators further concluded that the dead animals were not in retaliation for Plaintiff's complaint about the noose. Nevertheless, Defendant decided that it would be appropriate to hold a meeting with the crews and supervisors in the Capital Region Power Delivery Department to reinforce Defendant's anti-discrimination and anti-harassment policies. Defendant also implemented an inspection program whereby the Power Delivery Department would be inspected on a monthly basis to ensure that there were no inappropriate materials in the workplace.

On July 17, 2003, Defendant conducted a meeting with the crew and supervisors. During the meeting, Defendant reviewed its relevant policies and advised that the display of items including a noose is inappropriate in the workplace. Defendant also advised the employees at the meeting that it is prohibited to retaliate against individuals who complain about inappropriate materials in the workplace.

On August 6, 2006, Plaintiff returned to work from a one month disability leave. Representatives from Defendant's Human Resources Department traveled to Albany to inform Plaintiff of the conclusion of their investigation and the resulting action. Plaintiff also was informed that if she had any additional complaints, she should contact the Human Resources Department. Plaintiff responded that she was satisfied with the information provided to her and thanked the human resources representatives for their investigation.

On October 5, 2003, Plaintiff's temporary/durational position as a Janitor A ended. Accordingly, Plaintiff was transferred back to her last regular position (Meter Reader B). Shortly thereafter, Plaintiff bid on a part-time Janitor AA position in the Facilities Department


at the Company's Troy location.  When Prefore interviewed Plaintiff for the job, Plaintiff was reminded that she would lose her benefits if she accepted a part-time position.  Plaintiff was awarded, and accepted, the part-time Janitor AA position.  The Janitor AA position was in a different location than her prior Janitor A position and required her to work at facilities that had different personnel and crews from those in the North Albany location.

On December 4, 2003, Plaintiff advised Prefore that she injured herself while lifting a trash bag containing some heavy metal parts.  Prefore advised Plaintiff to complete a Work-Related Injury Report.  Prefore also advised Plaintiff to seek medical attention.  When Plaintiff returned to work, she complained to Prefore that someone must be out to get her by placing metal in the garbage.  Prefore asked Plaintiff if she would like to report the incident to the Human Resources Department.  Plaintiff declined to report the matter to Human Resources.

Plaintiff also complains in her Complaint that someone deliberately soiled the restrooms she cleaned at the Troy facility with feces and urine.

On May 28, 2004, Plaintiff filed a charge with discrimination with the New York State Division of Human Rights ("NYSDHR") and cross-filed with the Equal Employment Opportunity Commission.  In her charge of discrimination, Plaintiff complained of the noose, dead animals, and trash bag incidents.  The NYSDHR completed an investigation and concluded that there was no probable cause to believe that Plaintiff was the subject of unlawful discrimination.

Plaintiff resigned her employment with Defendant on August 13, 2004.  Between the date of her initial complaint (June 20, 2003) and the date of her resignation, Plaintiff did not complain to the Human Resources Department of any other forms of racial harassment,

retaliation, or other inappropriate conduct by her co-workers. Prior to resigning, Plaintiff was offered a full-time position with the Guilderland YMCA. Plaintiff began working for the Guilderland YMCA shortly after resigning her employment with Defendant.

After receiving her right-to-sue letter, Plaintiff commenced the instant action. Presently before the Court is Defendant's motion for summary judgment seeking dismissal of the Complaint in its entirety. Plaintiff has failed to respond.

## II.     STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21

F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). With this standard in mind, the Court will address Defendant's motion.

### III.  DISCUSSION

#### a.  **Violation of Local Rule 7.1(b)(3)**

Pursuant to N.D.N.Y.L.R. 7.1(b)(3), "[a]ny party who does not intend to oppose a motion . . . shall promptly notify the Court and the other parties of such intention. Notice should be provided at the earliest practicable date, but in any event no less than FOURTEEN CALENDAR DAYS prior to the scheduled return date of the motion . . . . Failure to comply with this Rule may result in the Court imposing sanctions." (emphases in original).

Defendant moved for summary judgment and selected a proper return date - November 13, 2006. The motion appears to have been properly served upon Plaintiff via the Court's CM/ECF system. The Court's docket properly indicates that opposition papers were due on or before October 27, 2006. Moreover, the date for filing opposition papers was easily calculated in accordance with N.D.N.Y.L.R. 7.1(b)(1). Thus, Plaintiff should have been well aware of the return date and the date by which opposition papers were due. To date, Plaintiff has neither filed opposition papers nor informed the Court whether she does not intend to oppose the motion. Accordingly, it appears that Plaintiff has failed to comply with this Rule. Plaintiff's attorney is, therefore, Ordered to Show Cause within fourteen days of the date of this Order why sanctions should not be imposed for violating this Rule. Counsel's response shall be in the form of an affidavit not to exceed five pages in length.

**b.       Whether Plaintiff May Maintain An Action Under the NYSDRHL**

Plaintiff asserts claims pursuant to N.Y. EXEC. LAW § 296, et seq. Under the New York Human Rights Law, "[o]nce a complainant elects the administrative forum by filing a complaint with the Commission on Human Rights, that becomes the sole avenue of relief, and subsequent judicial action on the same complaint is generally barred, except in the one instance where dismissal is for 'administrative convenience'." Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 884 (2d Cir. 1995); see N.Y. Exec. Law § 297(9).[2] In this case, Plaintiff pursued her complaint with the NYSDHR which did not dismiss the claim on grounds of administrative convenience. Because no exception applies, Plaintiff may not bring a claim in this Court under the NRSDHR and such claim is dismissed for lack of subject matter jurisdiction. Moodie, 58 F.3d 879; Johnson v. County of Nassau, 411 F. Supp.2d 171, 184 (E.D.N.Y. Jan 23, 2006).

**c.       Whether Plaintiff's Claims of Harassment Are Timely**

Before commencing suit alleging violations of Title VII, a plaintiff must first file a charge of discrimination with the EEOC within the statutory time period. See Nat'l R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2070 (2002). Pursuant to 42 U.S.C. § 2000e-5(e)(1),

---

[2] That section provides, in relevant part, as follows:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

Thus, the time within which a charge of discrimination must be filed with the EEOC varies depending on whether a charge has initially been filed with an appropriate state agency. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).  If a charge is filed with a proper state agency, as it was here, it must be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see Morgan, 122 S. Ct. at 2070.  "A claim is time barred if it is not filed within these time limits."  Morgan, 122 S. Ct. at 2070.

With respect to hostile work environment claims, "[t]heir very nature involves repeated conduct."  Morgan, 122 S. Ct. at 2073.  "The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years."  Id.  "Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim."  Id. at 2075.  "It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability."  Morgan,

122 S. Ct. at 2074.  "In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." Id. at 2075.  Thus, in determining whether a hostile work environment claim is timely, "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Id. at 2076.

For reasons to be more fully discussed, the Court finds that there is no actionable hostile work environment claim.  Even assuming there was a hostile work environment, there is no evidence linking the untimely incidents (the noose and dead animal incidents which occurred in June 2003, more than 300 days before the filing of the charge of discrimination in May 2004) to the timely incidents (the garbage bag and rest room incidents).  The garbage bag and rest room incidents occurred in Defendant's Troy office, which is at a different facility in a different geographic location than North Albany, where the other incidents occurred.  Each facility has different crews and personnel and there is no evidence linking any of these incidents together.  Accordingly, the noose and dead animal incidents are time-barred.

### d. **Plaintiff's Claims of Discrimination Pursuant to 42 U.S.C. § 1981 and Title VII**

Plaintiff claims that she was the victim of a race-based hostile work environment.  As the Second Circuit has explained,

> In order to prevail on a hostile work environment claim under Title VII, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . . This test has objective and subjective elements: the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.  Among the factors to consider when determining whether an environment is sufficiently hostile are the frequency of

> the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. In determining whether a hostile environment exists, we must look at the totality of the circumstances. As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. The environment need not be unendurable or intolerable. Nor must the victim's psychological well-being be damaged. In short, the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.

Terry v. Ashcroft, 336 F.3d 128, 147-48 (2d Cir. 2003) (internal citations, quotations and alterations omitted). Of course, to be actionable, any offensive conduct must be because of a protected characteristic, such as race. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

There is insufficient evidence that any of these instances were based on race. The Court is aware of the historical connotations of a noose as it relates to the civil rights struggles in this county. However, there is nothing in this case remotely suggesting that the noose at issue here was related in any way to race. The noose was located in the "bum's room" in a building for which Plaintiff was not ordinarily responsible. Plaintiff had been filling in for another janitor on that day. To conclude that the noose was based on race, even considering the historical connotations, would be to engage in speculation. The only evidence before the Court is that the noose was aimed toward a white, male employee regarded as obnoxious and was intended as a practical joke.

With respect to the dead animals, it is undisputed that Plaintiff never saw the animals. Rather, she was informed about the animals by a co-worker. Although Plaintiff assumed that

the animals were placed there in retaliation for her complaint about the noose, there is no evidence (other than the temporal proximity between her complaint and the finding of the animals) suggesting that the animals were placed near the trash can on account of Plaintiff's race or because she complained about the noose. To the contrary, the undisputed evidence before the Court is that it was not uncommon for animals that had been electrocuted at a sub-station to be returned to the garage for disposal. This explains the rat, which, as it turns out, was actually an electrocuted squirrel. Further, there is evidence that there was a pigeon problem in the garage and, therefore, it was not uncommon to find dead pigeons. This explains the pigeon. Moreover, the circumstances under which the dead animals were located detract from any inference of discrimination or retaliation. The animals were in plastic bags near a trash can. They were neither exposed nor placed in an area that would suggest it was aimed at Plaintiff.

Turning to the trash bag incident, there is no evidence suggesting that someone deliberately placed metal objects in a garbage bag with the intent to harm Plaintiff because of her race. This is pure speculation.

Finally, Plaintiff complains that someone deliberately placed urine and feces on the wall of a bathroom she cleaned in Troy. Once again, however, Plaintiff offers no evidence, direct or circumstantial, tending to suggest that the condition of the rest room had anything to do with Plaintiff personally or her race. Indeed, there is evidence in the records that the Troy bathroom frequently had cleanliness issues.

Considering these incidents in their totality, there is an insufficient basis upon which a fair-minded trier of fact could reasonably conclude that they were based on Plaintiff's race. Similarly, the Court finds that a trier of fact could not reasonably conclude that these four

instances are sufficiently severe or pervasive to constitute a hostile work environment. Two of the incidents (the noose and dead animals) occurred in a similar location and in close temporal proximity. The other two incidents (the trash bag and the rest room conditions) occurred at different locations from one another and from the first two incidents. Different personnel worked at the different locations. There is insufficient evidence linking any of these incidents together such that it could reasonably be concluded that Plaintiff was the victim of a hostile work environment.

Even assuming that Plaintiff was the victim of a hostile work environment, Defendant cannot be held liable because a fair-minded trier of fact could only reasonably conclude that: (1) there is insufficient evidence that Defendant failed to provide a reasonable avenue of Complaint; and (2) Defendant took prompt and reasonable remedial action. Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) ("When the source of the alleged harassment is a co-worker, the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.") (internal quotations and citation omitted). The undisputed evidence is that Defendant was able to complain to the Union Steward, her supervisor, and the Defendant's Human Resources Department. Upon receiving the complaint, the Union Steward immediately removed the noose. Plaintiff's supervisor immediately reported the matter to Rogers, who conducted a prompt investigation. Once Plaintiff complained to the Human Resources Department, that Department conducted an immediate and thorough investigation and concluded that no discrimination or retaliation had occurred. Nonetheless, Defendant took the initiative to hold a meeting and reinforce the company policies against harassment, discrimination, and

retaliation. There is no evidence of any further incidents in the North Albany facility after Defendant conducted these meetings. It, therefore, appears that Defendant remedied the situation and there is insufficient evidence to the contrary to create a triable issue of fact on this issue. The other two incidents did not warrant any response because, as discussed, there was, and remains, insufficient reason to believe that they were race-based or otherwise aimed at Plaintiff for any reason. In any event, Plaintiff did not report any further incidents of discrimination or retaliation to the Human Resources Department.

For the foregoing reasons, Plaintiff's claim of a hostile work environment is dismissed.

**e.    Retaliation**

Plaintiff also claims that she was retaliated against for engaging in protected activity. This claim, too, must be dismissed. One element of a retaliation claim is that Plaintiff suffer an adverse employment action. Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199 (2d Cir. 2006). There is insufficient evidence upon which it could reasonably be conclude that Plaintiff suffered any adverse employment action. The pigeon/squirrel incident do not constitute adverse employment action. The same holds for the trash bag and rest room incidents. Even considering all the incidents together, for the same reasons previously discussed, they are insufficient to demonstrate a hostile work environment directed at Plaintiff on account of her having complained about the noose. Plaintiff has failed to point to any other possible changes in the terms and conditions of her employment.

Further, there is no causal relationship suggesting retaliation. Although the dead animal incident was close in time to when she complained of the noose, there is simply nothing tending to connect the incidents. The Court is aware that someone who complains can be referred to as a "rat" or a "stool pigeon." However, the dead animal was not a rat, but

a squirrel that apparently was electrocuted at a sub-station and returned to the garage for disposal. The pigeon was found in connection with the pigeon problem Defendant was experiencing in the garage. As previously discussed, there is no evidence connecting the trash bag and rest room incidents to each other or to the noose and/or dead animal incidents. There is simply insufficient evidence to demonstrate causation. The retaliation claim must be dismissed.

### f.    Constructive Discharge

Plaintiff also claims that she was constructively discharged. For the reasons previously discussed in connection with the hostile work environment claim, a fair-minded trier of fact could not reasonably conclude that Plaintiff's "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." Pennsylvania State Police v. Suders, 542 U.S. 129, 146 (2004). There is insufficient evidence of race-based conduct and insufficient evidence of such severe working conditions that a reasonable person would have resigned.

### g.    Claims Pursuant to 42 U.S.C. §§ 1982 and 1983

Lastly, Plaintiff also asserts claims pursuant to 42 U.S.C. §§ 1982 and 1983. The § 1983 claim must be dismissed because there is no evidence suggesting that Defendant acted under color of state law. The § 1982 claim must be dismissed because it does not apply to employment discrimination claims where Plaintiff's job did not constitute real or personal property. Evans v. Meadow Steel Products, Inc., 572 F. Supp. 250, 253 (N.D. Ga. 1983); see also Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968) (section 1982 only applies to real and personal property); Jenkins v. Trustees of Sandhills Community College, 259 F. Supp.2d 432 (M.D.N.C.), aff'd, 80 Fed. Appx. 819 (4th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY. Plaintiff's attorney is Ordered to Show Cause within fourteen days of the date of this Order why sanctions should not be imposed for violating N.D.N.Y.L.R. 7.1(b)(3).

IT IS SO ORDERED.

Dated: November 3, 2006

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge